**FIRST NATIONAL BANK IN DALLAS, Appellant,**

v.

**Tom L. WALKER, Appellee.**

**No. 19010.**

Court of Civil Appeals of Texas, Dallas.

Dec. 6, 1976.

Robert M. Roller, Thomas W. Craddock, Coke & Coke, Dallas, for appellant.

Linda S. Aland, Strother, Davis, Stanton & Levy, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

First National Bank in Dallas (First National) brought this action against Tom L. Walker (Walker) and two other individuals, as guarantors of the corporate indebtedness of Instant Ice, Inc. to the bank. Prior to trial, judgment was rendered by agreement against the other two guarantors. Following a jury trial, judgment was rendered that First National take nothing against Walker, and from that portion of the judgment, First National appeals. In ten points of error, First National bases its appeal on the contention that: (1) The trial court erred in rendering the judgment dated January 29, 1976, because by vacating a previous judgment it automatically granted a new trial in the cause; (2) the trial court erred as a matter of law in rendering judgment because there is no evidence to support the verdict or alternatively because the verdict is against the great weight and preponderance of the evidence; (3) the trial court erred in admitting evidence concerning the terms of an oral agreement which conflicted with the terms of the written guaranty agreement executed by Walker; and (4) the trial court erred in rendering judgment because the issues submitted to the jury did not support a defense to the liability of Walker under the written guaranty agreement. We find no merit to any of these contentions and accordingly affirm the judgment.

On May 2, 1974, Instant Ice, Inc. executed a promissory note payable to First National in the amount of $30,000. Contemporaneous with the execution of the note, two shareholders of Instant Ice, Inc., Frank E. Frey and Gene H. Hoffman, executed unlimited written agreements guaranteeing the indebtedness evidenced by the note. Also, First National required that two other shareholders of the corporation, including Walker execute guaranty agreements. On August 7, 1974, Walker appeared at First National upon the request of one of its officers, Vaughn C. Pearson, and signed a blank unlimited guaranty agreement on the note. Although Walker admits placing his signature on this agreement, he testified that because of business commitments he was in a hurry to leave town and relied upon an oral agreement made with Pearson, as an officer of the bank, that (1) the blank guaranty would not be completed and become effective until Pearson obtained the signature of one Ted Kreatschman upon a similar guaranty; and (2) upon obtaining the latter individual's signature, Pearson would complete the guaranty form in such a manner as to limit Walker's liability to a percentage of the $30,000 loan equal to Walker's percentage of stock ownership in Instant Ice, Inc. He also testified that in reliance upon this oral agreement, he signed the written guaranty agreement without the necessary entries which would limit his

liability. However, Pearson testified that there was no such agreement and that Walker stated only that he wished to limit his liability to $30,000, the amount of the corporation's note outstanding at that time. Walker did not receive a copy of the written guaranty agreement after completion and was not aware of the liability contended by the bank until the institution of this suit.

The bank sued Walker, Frey and Hoffman upon the guaranty agreement signed by each of them in connection with the loan. Walker denied execution of the guaranty agreement in the form sued upon and asserted that, in reliance upon conditions precedent to the effectiveness of the agreement, he signed a printed guaranty form with none of the blanks filled.

In response to special issues submitted, the jury found that: (1) at the time Walker signed the guaranty agreement, the figure "$30,000" did not appear in said instrument; (2) Vaughn Pearson agreed that said guaranty would not be completed unless Ted Kreatschman's signature was obtained on a similar guaranty; and (3) Pearson agreed to fill in the dollar amount of said guaranty so as to limit Walker's liability to a percentage of the $30,000 loan equal to his percentage of ownership in Instant Ice, Inc. Based upon this verdict the trial court rendered a take-nothing judgment in favor of Walker.

### Judgment

Following receipt of the verdict, and on January 23, 1976, the trial court signed and rendered a judgment against Frey and Hoffman, jointly and severally, in the sum of $30,000, with interest and attorney's fees, and ordered that First National have and recover nothing from Walker. On January 29, 1976, apparently acting upon suggestions of Walker's attorney that the January 23, judgment contained certain erroneous recitals, the trial court entered an order reciting that some of the recitals in the January 23 judgment are erroneous and accordingly said judgment should be set aside. On the same date, January 29, 1976, the trial court signed another judgment in favor of the bank and against Frey and Hoffman but denying the bank any recovery against Walker. A comparison of the two judgments reveals that the only changes made in the second judgment were: (1) modification of the phrase "wholly based upon the findings of the jury" to read "on findings of jury;" (2) a reduction to writing of the oral pronouncement of judgment that Walker recover his costs from First National; and (3) a recitation that First National announced notice of appeal in open court to that portion of the judgment relating to Walker.

■ Notwithstanding these limited changes which do not include a review of the facts of the case after judgment, First National argues that the mere fact that an order setting aside the first judgment was entered separate and apart from the entry of the second judgment means that a new trial was granted automatically. First National cites numerous authorities to support its contention, but our review of each of them convinces us that they are not authoritative in the factual situation presented in this case. *Wichita Falls Traction Co. v. Cook,* 122 Tex. 446, 60 S.W.2d 764, 767–68 (1933); *Schaffer v. Speckels,* 62 S.W.2d 85 (Tex.Com.App.1933, holding approved); *Marmion v. Herrin Trans. Co., Inc.,* 127 S.W.2d 558 (Tex.Civ.App.—Beaumont 1939, writ ref'd); *Beal v. Great American Indemnity Co.,* 322 S.W.2d 399, 403 (Tex.Civ.App. —Texarkana 1959, no writ). These cases involve situations in which the court set aside a judgment based upon a jury verdict for one party and entered a new judgment in favor of the opposite party. The courts followed the principle that a trial by jury is a lawful right given to litigants. When there is some evidence regarding a fact issue, it is the peculiar providence of the jury to find the facts of the case, and no court has the right to substitute its own findings of fact and render judgment thereon in opposition to the findings of the jury. Thus, the cases are not analogous to the situation herein because the only changes in the original judgment were slight and did not change the principal basis of recovery

and denial of recovery as recited in the original judgment.

First National also cites the case of *Smith v. Thornton,* 119 Tex. 344, 29 S.W.2d 314 (1930) holding that when a trial court renders judgment upon the findings of the jury, the verdict and judgment become merged, and the court's action in setting aside the judgment operates also to set aside the verdict and to grant a new trial. However, there are other cases which hold that the trial court has the power to amend, modify, reform or set aside any of its judgments, decrees or orders. *Wood v. Wheeler,* 7 Tex. 13, 16 (1851); *Blum v. Wettermark,* 58 Tex. 125, 127 (1882); *Gulf C. & S. F. Ry. v. Muse,* 109 Tex. 352, 207 S.W. 897, 898 (1919); *Swanson v. Holt,* 126 Tex. 383, 87 S.W.2d 1090, 1091–92 (1935); *A. F. Jones & Sons v. Republic Supply Co.,* 151 Tex. 90, 246 S.W.2d 853–55 (1952); *Whisenant v. Fidelity & Casualty Co. of New York,* 354 S.W.2d 683, 685 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); *Dubert v. Adkins,* 475 S.W.2d 383, 385 (Tex.Civ.App.—Corpus Christi 1971, no writ); *Imperial Insurance Co. v. Ellington,* 498 S.W.2d 368, 370 (Tex. Civ.App.—San Antonio 1973, no writ); and Reavley & Orr, *The Trial Court's Power to Amend Its Judgment,* 25 Baylor L.Rev. 191, 205–07 (1973).

After a review of these cases, we conclude that a trial court is not prohibited from correcting its judgment so long as it does not attempt to make new findings of fact or usurp the authority of the jury. Tex.R.Civ.P. 329b specifically provides that a judgment does not become final for thirty days after its rendition. During that period of time, the trial court has jurisdiction over its judgment, and we do not believe the trial court abuses its power in modifying or revising a judgment so long as it does not review and change the fact findings made at the time of the first judgment. In the instant case the trial court did not review the facts but only attempted to modify its written judgment to reflect what previously had been decided upon oral pronouncement of judgment. The mere technicality that the trial court made two separate entries instead of incorporating them into one instrument should not be controlling when the trial court's intention is clearly shown by the instruments signed. Consequently, we overrule appellant's point concerning the validity of the judgment which forms the basis of this appeal.

### Sufficiency of the Evidence—Parol Testimony

The principal thrust of the remaining points of error advanced by appellant is that the trial court erred in permitting Walker to introduce parol testimony relating to the execution and delivery of the guaranty agreement and that in the absence of such testimony there would be no evidence or insufficient evidence to support the answer of the jury to special issues number two and three. We hold that parol evidence was admissible for two reasons. It was admissible to show an agreement creating a condition precedent to delivery of the instrument as found by the jury in answer to the second special issue. It was admissible also to show the agreement of the parties concerning the information to be placed in the blank spaces on the form since they were not filled at the time the instrument was executed, as found by the jury in answer to the first and third special issues. Since the parol evidence was properly admitted, we hold there is sufficient evidence to support the jury verdict.

During the trial appellee Walker testified that although he was not involved with the negotiations leading to the $30,000 loan from the bank to Instant Ice, Inc., he was familiar with such loan and that on August 7, 1974, he received a telephone call from First National's officer, Vaughn Pearson, who requested that he execute a guaranty of the loan. He said that this telephone call was the first contact he had with Pearson or anyone else connected with the bank concerning the loan or the execution of the guaranty agreement. At Pearson's request Walker went to his office and upon his arrival, Pearson was busy with a customer so Pearson's secretary handed Walker his printed form of guaranty which was com-

pletely blank, that is no blanks were filled in with typewriting. When Pearson appeared, Walker discussed the matter of the blank form with Pearson. Walker indicated that he would sign the blank guaranty form upon the condition that the bank secure from Ted Kreatschman a similar agreement and that the extent of Walker's guaranty would be limited to the amount of his ownership interest in Instant Ice, Inc. which was approximately fifteen percent. Walker testified that Pearson agreed to his conditions of delivery of the agreement. Walker testified that he executed a blank form of guaranty and left it with Pearson to be completed only upon the agreed condition of delivery. The bank made one preliminary objection to Walker's testimony as being violative of the parol evidence rule and then, at the completion of Walker's entire testimony, the bank moved to strike all of his testimony. The trial court overruled the objection and the motion and permitted the testimony to go to the jury.

Pearson denied that any parol agreements were made with respect to the guaranty, and two of the shareholders of Instant Ice, Inc. denied that Walker had ever informed them of the agreement limiting his liability under the guaranty. At the time of trial Instant Ice, Inc. was hopelessly insolvent.

The printed form of guaranty executed by Walker contained two blanks other than the date. The name "Instant Ice, Inc." is typed in one of the blanks. In paragraph one, it is provided that:

> Unless a different definition is stated in paragraph twelve hereof, the expression "guaranteed indebtedness," as that term is used herein, means "all indebtedness of every kind and character . . and without limit as to amount except that if, but only if, the blank at the end of this sentence be filled in the amount of the guaranteed indebtedness shall be limited to the aggregate at any one time . . . ."

In the document sued on, the blank is filled with the principal sum of $30,000. Paragraph twelve provides:

> Unless specific indebtedness is described in the space below, the express "guaranteed indebtedness," as used herein shall have the meaning stated in paragraph one, but if the space below is filled in, such expression shall mean the indebtedness described below, together with all renewals or extensions of such indebtedness, or any part thereof:

The space following this colon remains blank.

Careful examination of the written guaranty agreement fails to reveal the existence of a merger clause or any other statement which would indicate the intention of the parties that any and all statements and agreements made prior to the execution of the instrument should be merged into the instrument itself.

The bank argues that the written guaranty agreement sued upon is an unconditional and unlimited agreement and is the complete integration of all agreements between the parties. If the amount is left blank, the guaranty instrument does purport to create an unlimited guaranty of indebtedness subject to the twelve terms and conditions included therein. However, the instrument does not state that these are the only conditions nor does it contain a merger clause. The authorities cited by the bank, such as *Bowden v. Partners' Finance,* 278 S.W.2d 866, 868 (Tex.Civ.App.—Amarillo 1955, no writ); *Henslee v. First National Bank,* 314 S.W.2d 881, 883 (Tex.Civ.App.—Dallas 1958, no writ); *Hood v. First National Bank,* 410 S.W.2d 449, 451 (Tex.Civ.App.—Amarillo 1966, writ ref'd n. r. e.); and *Kane v. Union State Bank,* 384 S.W.2d 358, 360–61 (Tex.Civ.App.—Eastland 1964, writ ref'd n. r. e.), deal with cases which involved a completely integrated written agreement which were either unconditional on their face or contained specific merger clauses.

In the case before us the jury found that at the time Walker signed the guaranty agreement, the figure "$30,000" did not appear in the instrument and that Pearson agreed the guaranty would not be completed unless Ted Kreatschman's signature was

obtained on a similar document. Further, the jury found that Pearson agreed to fill in the dollar amount of said guaranty so as to limit Walker's liability to a percentage of the $30,000 loan equal to his percentage of ownership in Instant Ice, Inc. (which would necessitate filling the blank contained in Paragraph twelve, cited above). Walker contends that these findings support a defense of an oral condition precedent to the effectiveness of the written guaranty agreement and that a take-nothing judgment was proper. We agree.

## Conditional Delivery

▉ Parol testimony is admissible to show the execution of a written instrument under an agreement that it is not to become effective except upon certain conditions. *Holt v. Gordon,* 107 Tex. 137, 174 S.W. 1097 (1915), and *Brewer v. Tedford,* 447 S.W.2d 479, 484–85 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.). It is well settled that a written contract does not become a binding obligation until delivery, and, if the delivery is conditional, the written contract does not become a binding obligation until a condition upon which delivery depends has been fulfilled. *American Slicing Machine Co. v. Vincent,* 279 S.W. 317 (Tex.Civ.App.—Amarillo 1926, no writ) and cases cited therein.

▉ Also, one who executes an obligation conditional upon the express representation, of which the obligee has notice, that a third party shall likewise execute an agreement and share the liability thereon, will be released from liability if the third party fails to so execute the instrument. *Kugle v. Traders' State Bank,* 252 S.W. 208, 209 (Tex.Civ.App.—San Antonio 1923, no writ) and *Roddy v. Citizens' State Bank,* 11 S.W.2d 652, 653 (Tex.Civ.App.—Dallas 1928, no writ).

We hold that the trial court did not err in admitting parol evidence to establish an oral agreement which is a condition precedent to the effectiveness of the guaranty and which limited the delivery thereof.

## Incomplete Instrument

▉ Evidently the jury, as finders of fact and judges of the credibility of the witnesses, chose to believe Walker's testimony concerning the condition precedent to the guaranty agreement. After a review of the evidence we cannot say that the verdict is against the great weight and preponderance of the evidence. Even viewing the evidence most favorably to the bank, the bank's officer's own testimony does not support the bank's position that the blanks were filled strictly in accordance with the oral agreement. Upon direct examination, Pearson testified concerning the oral conversations at the time of the signing of the agreement as follows:

Q. What was the nature of those conversations?

A. He refused to sign any guaranty which had any blanks in it. He indicated that he wanted to limit his personal liability to the event of the loan, to the then loan outstanding, $30,000.

▉ Thus, Pearson's own testimony does not support the instrument as sued upon because when the $30,000 amount was inserted on the guaranty form, it was placed in paragraph one which created the guaranty of all indebtedness now existing or hereafter arising but limited only in that the aggregate amount at any one time should be no more than $30,000. However, Pearson's testimony indicates that his understanding of the agreement required an entry in paragraph twelve of the agreement restricting the guaranty to the then outstanding loan in the amount of $30,000. When a party signs an instrument containing blanks and entrusts it to another under an agreement that the blanks will be filled in a certain manner, the party to whom the instrument is entrusted has a duty to fill the blanks strictly in accordance with the agreement, and, in the absence of negotiations to an innocent holder, the party signing the instrument is not bound to the terms subsequently inserted in the blanks if the instrument after it is completed does not reflect the true agreement. *Sentinel*

*Fire Ins. Co. v. Anderson,* 196 S.W.2d 649, 651 (Tex.Civ.App.—Amarillo 1946, no writ).

Finally, the bank argues that the jury's answer to the special issues submitted can be construed to mean that if First National did not obtain Kreatschman's signature on a similar guaranty, it was not required to insert an amount in the blank and Walker's guaranty was unlimited.

In this connection the bank argues that even if the amount of the guaranty was blank when the instrument was signed and delivered, the document was nevertheless complete because it expressly provides that the guaranty is unlimited if no amount is inserted. Thus, the bank insists that parol evidence was not admissible to show that the parties agreed otherwise. We do not accept this argument because, according to the undisputed evidence, neither of the parties treated the instrument as complete in this form. The document sued on shows on its face that the figure "$30,000" was inserted, and since there is evidence tending to show that the insertion was made after delivery, we must hold that parol evidence was admissible to show that the document was not completed in accordance with the agreement of the parties.

The judgment of the trial court is affirmed.

Affirmed.